UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JOHNNIE G. BRYANT, JR., | ) Civil Action No.: 4:12-cv-2300-TLW |
| Plaintiff, | ) |
| -vs- | ) |
| | ) **REPORT AND RECOMMENDATION** |
| SPRINGLEAF FINANCIAL SERVICES, INC. f/k/a AMERICAN GENERAL FINANCE, INC., | ) |
| Defendant. | ) |
| SPRINGLEAF FINANCIAL SERVICES OF SOUTH CAROLINA, INC., formally known as AMERICAN GENERAL FINANCIAL SERVICES, INC. | ) |
| Counterclaim Plaintiff, | ) |
| -vs- | ) |
| JOHNNIE G. BRYANT, JR., a/k/a Johnnie Gary Bryant, Jr., a/k/a Johnny Bryant, a/k/a Johnnie Bryant and JOHNNIE BRANDON BRYANT, a/k/a Johnnie B. Bryant, a/k/a Johnny Bryant, a/k/a Johnnie Bryant, | ) |
| Counterclaim Defendants. | ) |

## I.     INTRODUCTION

This action was filed by Johnnie G. Bryant, Jr. (Father) against Springleaf Financial Services (Springleaf) arising out of Springleaf's reporting of a delinquint and charged-off loan account (the Loan). In it's Answer and Counterclaim (Document # 8) filed November 7, 2012, Springleaf asserted a counterclaim against Father for civil conspiracy and a claim against Johnnie Brandon

Bryant (Son) for fraud. The Summons and Answer and Counterclaim were personally served on Son on November 19, 2012. Affidavit of Service (Document # 17). Son has not made an appearance in this action. On May 28, 2013, Springleaf filed an Amended Answer and Counterclaim (Document # 39), which added a cause of action for negligence against Father. It did not include any additional claims against Son. The Amended Answer and Counterclaim was not served on Son. Springleaf filed a Request for Entry of Default (Document # 54) against Son on December 20, 2013. The clerk made an entry of default against Son on February 11, 2014 (Document # 58).

All claims have been resolved except for Springleaf's cause of action for fraud against Son. Presently before the court is Springleaf's Motion for Default Judgment (Document # 62) against Son. This motion was referred to the undersigned pursuant to 28 U.S.C. § 636. This report and recommendation is entered for review by the district judge.

## II.     FACTUAL ALLEGATIONS

As noted above, Father initiated this action against Springleaf for various causes of action related to the reporting of a delinquent and charged-off loan. Through the factual investigation of Father's claims, Springleaf discovered that Son had impersonated Father to obtain the Loan, and Springleaf filed a counterclaim against Son for fraud. Counterclaim ¶¶ 42-51. Springleaf alleges that 1) Son, in order to obtain the Loan, represented that he was his Father and was the person associated with social security number ending in 7949; 2) Son's representations that he was his Father and was the person associated with social security number ending in 7949 were false; 3) Son's representations concerning his identity when obtaining the Loan were material to his obtaining the Loan; 4) Son knew that his representations concerning his identity and social security number were false; 5) Son intended for Springleaf to act upon his misrepresentations to approve and offer

-2-

the Loan; 6) Springleaf had no notice or knowledge that Son's representations were false; 7) Springleaf relied upon the representations in making the Loan; 8) Springleaf had a right to rely upon the truthfulness of those representations; and 9) Springleaf has suffered actual damages as a consequent and proximate result of Springleaf relying upon the truth of Bryant's representations. Counterclaim ¶¶ 42-51.

As a result of Bryant's fraud, Springleaf reported the Loan and its delinquent status on Father's credit report believing that the individual with social security number ending in 7949 was the borrower.[1]  Patterson Decl. at ¶ 4.  Although Son was in the best position to avoid any delinquent reporting of the Loan on Father's credit report by simply paying the $1,094.92 owed on the Loan or paying the judgment[2] Springleaf later obtained, he did nothing while Father filed lawsuits against entities like Springleaf for statutory damages and punitive damages under the Fair Credit Reporting Act.  Springleaf incurred $126,105.48 in attorneys' fees and costs in defending the lawsuit brought by Father because of Son's fraud.  Becker Decl. ¶ 2.  Springleaf also incurred $3,732.94 in costs for participating in depositions and mediation scheduled in this lawsuit by Father because of Son's fraud.  Patterson Decl. ¶ 5.  Springleaf seeks default judgment in the amount of

---

[1]Springleaf is not the only entity to be confused by Son's conduct.  See Bryant v. Midland Credit Mgmt., Inc., No. 4:11-cv-03428-TLW (D.S.C., filed Dec. 16, 2011); Bryant v. Experian Info. Solutions, Inc., No. 4:12-cv-01370-TLW (D.S.C., filed May 23, 2012); Bryant v. Trans Union LLC, No. 4:12-cv-03586-TLW (D.S.C., filed Dec. 20, 2012); Bryant v. Equifax Info. Servs. LLC, No. 4:12-cv-03593-TLW (D.S.C., filed Dec. 20, 2012).

[2]Springleaf obtained a judgment against Defendant Johnny Bryant of 952 Lynch Rd, Coward, SC 29530 on April 20, 2009, for $1,296.06 after default.  Am. Gen. Fin. v. Johnny Bryant, Civil Case No. 090110136 (Lake City Magistrate Court, SC, April 20, 2009).

$129,838.42.[3]

**III.    DISCUSSION**

As noted above, Son was served with Springleaf's first Answer and Counterclaim on November 19, 2012, but did not file an Answer or otherwise respond. When Springleaf amended its Answer and Counterclaim in May of 2013, to add a cause of action for negligence against Father, it did not serve Son with the Amended Answer and Counterclaim. However, Fed.R.Civ.P. 5(a)(2) provides that "[n]o service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." See also Germano v. Taishan Gypsum Co., Ltd. (In re Chinese-Manufactured Drywall Prods. Liab. Litig.), 742 F.3d 576, 593-94 (5th Cir. 2014) (explaining Rule 5(a)(2) does not require a party in default be served with a pleading unless that pleading asserts a new claim for relief). The rule does not require that an entry of default by the clerk be made for it to apply.

> For the purposes of FRCP 5(a)(2), a party has failed to appear if it does not appear within the time proscribed for answering or otherwise responding to the complaint; no entry of default by the clerk is required. See Cutting v. Town of Allenstown, 936 F.2d 18, 21 (1st Cir.1991) ("Where defendants, as here, were served with the summons and do not appear and answer within the required period, they are 'parties in default' for Rule 5(a) purposes."); MacIntyre v. JP Morgan Chase, Nat'l Ass'n, No. 13 Civ. 1647(WJM)(MEH), 2014 WL 128032, at *4 (D. Colo. Jan. 14, 2014) ("A court need not have adjudicated a party as being 'in default' in order to trigger the applicability of Rule 5(a)(2)."); James W. Moore, et al., 3 Moore's Federal Practice § 15:17[3] at 80–81 (3d ed. 2013).

Allstate Ins. Co. v. Yadgarov, No. 11-CV-6187 (PKC)(VMS), 2014 WL 860019, at *6 (E.D.N.Y.

---

[3] There is a slight discrepancy in numbers between Patterson's Declaration and Becker's Declaration. Cf. Patterson Decl. ¶ 5 with Becker Decl. ¶¶ 2-3. Therefore, the undersigned has chosen the lesser of the numbers.

March 5, 2014) (adopting and incorporating Report and Recommendation).  Son was in default on December 11, 2012, when he failed to file a responsive pleading or otherwise appear in this case. Therefore, because the susequent Amended Answer and Counterclaim did not assert any new claims against Son, Springleaf was not required to serve him with the new pleading.

Because Son is in default for failing to file a responsive pleading or otherwise appear in this case, the allegations in Springleaf's counterclaim against Bryant are deemed admitted. Fed. R. Civ. P. 8(b)(6); see also Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). The admitted allegations set forth above are sufficient to establish fraud.  Under South Carolina law, a party must establish the following nine elements to prove fraud: 1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.  DeCecco v. Univ. of S. Carolina, 918 F. Supp. 2d 471, 522 (D.S.C. 2013) (citing Turner v. Milliman, 392 S.C. 116, 708 S.E.2d 766, 769 (2011)).  Son falsely and knowingly represented that he was his Father and was the person associated with social security number ending in 7949, which was material to obtaining the Loan.  Son intended for Springleaf to and Springleaf did in fact rely upon his misrepresentations to approve and offer the Loan. Springleaf had no notice or knowledge that Son's representations were false and had a right to rely upon the truthfulness of those representations. Springleaf has suffered actual damages as a result of relying on the truth of Son's representations.  Accordingly, Springleaf has established the Son's liability, and the court must

address the damages incurred by Springleaf.

Springleaf seeks a judgment against Son in the amount of $129,838.42. Springleaf argues that it has suffered damages in the form of attorneys' fees and costs for defending this litigation. Timothy D. Patterson, Assistant General Counsel for Springleaf declares that Springleaf retained Haynesworth Sinkler Boyd, P.A., to defend it in this action. Patterson Decl. ¶ 1. Springleaf has paid attorneys' fees and costs in the amount of $126,105.48. Becker Decl. ¶ 2. In addition, Patterson states that Springleaf incurred travel expenses of $1,348.01 for him to attend a Rule 30(b)(6) deposition, $1,291.67 for him to attend mediation and $1,093.26 for another employee, Timothy Parke, to appear for a Rule 30(b)(6) deposition. Patterson Decl. ¶ 5.

To determine whether a requested amount of attorney's fees is reasonable, the court should multiply the number of hours reasonably expended by counsel by a reasonable hourly rate. In determining reasonableness, the court shall consider the twelve factors set forth in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir.1978). Those twelve factors are "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." Barber, 577 F.2d at 226. A number of the factors may not be applicable in a particular case and, thus, need not be strictly applied. See E.E.O.C. v. Service News Co., 898 F.2d

958, 965 (4th Cir.1990).

James Y. Becker, a shareholder with Haynesworth Sinkler Boyd, P.A., declares that he and his staff have spent over 425 hours on this case, including "intensive loan document review and analysis of documentation of credit reporting processes, witness interviews and investigations, depositions, expert witness preparation, and discovery." Becker Decl. ¶¶ 1, 4. He also declares that the customary hourly fee for the type of legal services involved in this case ranges from $180 to $385 per hour. Becker Aff. ¶ 8. Becker declares that the factual investigation and legal analysis of claims under the Fair Credit Reporting Act and for identity theft are often complicated and the specific facts of this case were also complicated because Springleaf investigated a possible conspiracy between Son and Father because Son had opened numerous loans with other creditors using Father's social security number and Father had filed claims similar to those brought here against those creditors. Becker Aff. ¶ 5. Becker avers that he graduated from law school in May of 1992 and has been in private practice since that time. Becker Aff. ¶ 12. He has an AV rating with Martindale Hubbell and is included in Best Lawyers in America for Litigation–Banking and Finance. Becker Aff. ¶ 12. Emily Farr, who Becker avers also worked extensively on this case, graduated from law school in May of 2003, and has been in private practice with Haynsworth Sinkler Boyd, P.A., since September of 2003. Becker Aff. ¶ 12. Both Becker and Farr focus their practice in the financial services industry, within which Becker spends approximately 15 to 20 percent of his time handling credit reporting dispute cases and Farr spends approximately 30 percent of her time on such cases. Becker Aff. ¶ 12. Springleaf and Haynsworth Sinkler Boyd, P.A. have had a continuing professional relationship since 1996. Becker Aff. ¶ 14.

Based upon the nature of this case, which included questions of identify theft and conspiracy,

the experience, skill and ability of the attorneys, the undersigned finds the hourly rates to be reasonable. Additionally, based upon a review of the docket, the length of time this case has been pending, and the "intensive loan document review and analysis of documentation of credit reporting processes, witness interviews and investigations, depositions, expert witness preparation, and discovery" that was necessary to litgate this action, the undersigned finds 425 hours to be reasonable amount of time expended in this case. In addition, Springleaf incurred $3,732.94 in travel expenses for it's own participation in depositions and mediation in this action and as a result of Son's fraud. Patterson Decl. ¶ 5.

For the reasons discussed above, the undersigned recommends that Springleaf be awarded $126,105.48 in attorney's fees and $ 3,732.94 in travel expenses incurred as a result of defending this action.

### IV.    CONCLUSION

For the reasons discussed above, it is recommended that Springleaf's Motion for Default Judgment (Document # 62) be granted and that judgment be entered against Son, Johnnie Brandon Bryant, in the amount of $129,838.42.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

February 11, 2015  
Florence, South Carolina